IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

FILED
IN OPEN COURT
FEB - 8 2018
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:17cr120 |
| | ) | |
| SHIVAM PATEL, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

By signing below, the parties and their respective counsel stipulate and agree that the allegations in Counts One and Three of the pending indictment and the following facts are true and correct, and that if this case had gone to trial, the government's evidence would have established the following facts beyond a reasonable doubt:

1. On or about July 17, 2016, the defendant, SHIVAM PATEL, traveled from Williamsburg, Virginia, to China, where he worked briefly for a company providing education services. While in China, the defendant told his father he was unhappy with that country's treatment of Muslims. In late August, the defendant's employer was in the process of firing him and had purchased him an airline ticket to return from China to Richmond, Virginia, on August 23, 2016.

2. On August 24, 2016, the defendant's parents received a text message from him stating that he had left China and traveled to the Kingdom of Jordan rather than return to the United States. The defendant's parents later heard from the defendant that he did not intend to return to his parents' home.

3.     On August 28, 2016, the FBI Legal Attaché in Jordan learned that the defendant had been arrested and detained in Jordan, and that the Jordanians intended to deport him to the United States.

4.     The FBI agents obtained the computer used by the defendant before his departure to China and searched the computer pursuant to legal process. The FBI agents found that the user of the computer made multiple searches for material related to ISIS, including how to join ISIS and ISIS-related propaganda videos.[1]

5.     On September 2, 2016, the defendant boarded a flight from Amman, Jordan, to Chicago, Illinois. On that same day, the defendant initiated a conversation with an Undercover Employee ("UCE"). The defendant explained to the UCE that he had just gotten out of a Jordanian prison. The defendant told the UCE that he wanted to commit jihad and shahid (*i.e.*, martyrdom). Though he suggested his jihad may not be violent, he praised the violent terrorist attacks in Paris, Nice, and Orlando. He also discussed his admiration for Anwar al-Awlaki.[2]

---

[1] On or about October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act, and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act, and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224, to add the alias "Islamic State of Iraq and the Levant" as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham ("ISIS"—which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

[2] Anwar Al-Awlaki was an Islamic lecturer and a leader of Al-Qaeda in the Arabian Peninsula ("AQAP"), a Yemen-based designated foreign-terrorist organization that claimed responsibility for terrorist acts against targets in the United States, Saudi Arabia, Korea, and Yemen since its inception in January 2009. Pursuant to a Presidential Executive Order, Al-Awlaki was designated by the United States as a "Specially Designated Global Terrorist" on July

6. On September 3, 2016, the defendant arrived in the Detroit Metropolitan Airport's North Terminal, where he initiated a conversation with an FBI Task Force Officer ("TFO") who was dressed in plainclothes. The defendant told the TFO about his time in Jordan, including his arrest by Jordanian authorities and his time in a Jordanian prison. The defendant spoke with the TFO about ISIS and explained his position that ISIS, while extreme, is necessary. The defendant also told the TFO that he wanted to be "locked and loaded" (when saying "locked and loaded," the defendant gestured with his hands as if he were holding a rifle).

7. On September 4, 2016, and September 5, 2016, the defendant spoke to an FBI Confidential Human Source ("CHS") in Detroit. During their conversations, the defendant stated he went to Jordan in part to find like-minded Muslims. The defendant told the CHS that he went to Jordan to do something "bigger, better, and more purposeful." The defendant also told the CHS that "bigger, better, and more purposeful" meant dying in the cause of Allah. The defendant explained to the CHS that his trip to Jordan was a spur-of-the-moment decision, and the defendant said he did not want to return to the United States. He said that when he was not able to meet his contact in Jordan, he asked Jordanian taxi drivers about their feelings on ISIS and Jabhat al-Nusrah.[3]

8. The defendant also told the CHS that he wanted to blend into society and do something "glorious," but he did not want to make his parents sad. The defendant told the CHS that he wanted to make the "kuffar"—a derogatory term for non-Muslims—suffer. He also discussed his affinity for ISIS, which is based on his stated belief that ISIS members are true Muslims. The defendant told the CHS that he had watched videos and read articles about ISIS.

---

12, 2010. Al-Awlaki reportedly was killed in Yemen in September 2011.

[3] Jabhat al-Nusrah is a designated foreign terrorist organization.

During the conversation, the defendant sang a "Jihad Nasheed"—an ISIS fight song. He also told the CHS about making an ISIS flag and wanting to replace his neighbor's American flag with the ISIS flag. And, the defendant explained to the CHS that he chose to travel from China to Jordan, as opposed to Turkey, because he did not want to get caught like everyone else. The defendant also described his desire for a war between Muslim individuals and non-Muslim individuals, and he stated that he wants to join a Muslim army and receive training. The defendant told the CHS that one day he would be a martyr.

9. On or about September 6, 2016, the defendant moved back into his parents' house in Williamsburg. After moving home, he began applying for jobs with various local police departments, correctional facilities, probation offices, fire departments, and the United States military, including the United States Army and the United States Air Force.

10. On September 23, 2016, the defendant discussed in text messages with the CHS the attack on Fort Hood—which the defendant mistakenly called "Fort Knox"—in which a United States Army officer attacked his fellow soldiers.[4] The defendant stated the attack was "completely justified in my eyes," and that "Nidal Hussein [sic] died a martyr instead of a kafir."[5]

11. On November 30, 2016, the defendant called the United States Army recruiting office to inquire about the Officer Candidate Selection process. On December 13, 2016, he met with an Army recruiter (the "Army Recruiter") located in Williamsburg, Virginia. During the meeting, the defendant submitted his application for the United States Army Officer Candidate

---

[4] Nidal Hasan was a Major in the United States Army. On November 5, 2009, Hasan fatally shot 13 soldiers and injured more than 32 individuals on Fort Hood, which is located in Texas.

[5] Maj. Nidal Hasan did not die in the attack on Fort Hood.

Selection Process and the Army's Applicant Questionnaire he had filled out as part of the application process. The interview was video- and audio-recorded. The Army Recruiter reminded the defendant that the information he provided on the Applicant Questionnaire had to be true and accurate. The defendant was specifically reminded—as is stated on the form itself—that withholding, misrepresenting, or falsifying information on the form could subject him to criminal penalties under Title 18, United States Code, Section 1001. In the portion of the Applicant Questionnaire related to foreign travel, the defendant indicated that the only time he had traveled outside the United States within the last seven years was on a family visit to India in 2011-2012. The Army Recruiter asked the defendant specifically about that portion of the form, and the defendant denied that he had traveled anywhere else outside of the United States in the past seven years. After receiving the oral reminder that including false information on the form could subject him to criminal penalties, the defendant signed the form.

12. During the Army interview, on December 13, 2016, the defendant was asked to provide a copy of his passport. The Army Recruiter told the defendant that the Army would accept a copy of the passport, but that the Army Recruiter would need to verify that the copy was accurate by comparing it with the original passport. The defendant told the Army Recruiter that he could bring the original passport at a later date. Two days later, the defendant submitted to the Department of State an application for a replacement United States passport, including Forms DS-11 (Application for a U.S. Passport) and DS-64 (Statement Regarding a Lost or Stolen U.S. Passport Book and/or Card). On Form DS-64, the Department of State asks applicants to "[e]xplain how your U.S. passport book/card was lost or stolen." In response, the defendant wrote: "Accidentally thrown in garbage." He stated the date on which he lost his passport was October 15, 2016.

13. On December 1, 2016, the defendant emailed a United States Air Force Recruiting Official to inquire about the Officer Candidate Selection process. On January 30, 2017, the defendant met with an Air Force Recruiter (the "Air Force Recruiter") located in Virginia Beach, Virginia. During the meeting, the defendant submitted his application for the United States Air Force Officer Candidate Selection Process and the Form SF-86 Questionnaire for National Security Positions he filled out as part of the application process. The SF-86 form he submitted to the Air Force contained the same false statement regarding foreign travel he had made on the Army Questionnaire. The defendant signed the SF-86 form during the January 30, 2017, meeting.

14. The FBI arrested the defendant on July 6, 2017. The defendant told the arresting agents that he recently had been staying in a "manager's apartment" of a motel his father owns. Later that same day, FBI agents recovered the passport that the defendant claimed he lost on the form submitted to the Department of State. The passport was found in or near the "manager's apartment" at the motel.

15. Beginning in or about late 2016, the defendant made statements to the effect that he did not support ISIS.

16. The acts taken by the defendant in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case.

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney

By: _____
Andrew Bosse
Assistant United States Attorney
Justin Sher
Trial Attorney, National Security Division

*/s/ Alan M. Salsbury* AUSA

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Shivam Patel, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Shivam Patel, Defendant

I am the attorney for defendant, Shivam Patel. I have carefully reviewed the above Statement of Facts with him. His decision to enter into this factual stipulation is knowing, intelligent, and voluntary.

_____
Timothy G. Clancy, Esq., Defense Counsel
Lisa A. Mallory, Esq., Defense Counsel