IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.  CRIMINAL NO: 2:17CR120

SHIVAM PATEL,

        Defendant.

## POSITION OF PARTIES WITH RESPECT TO SENTENCING FACTORS

**NOW COMES** the Defendant, **SHIVAM PATEL**, by counsel, pursuant to § 6A1.2 of the Sentencing Guidelines and Policy Statements and the Court's Sentencing Procedures Order, and hereby advises that he has no objections to and does not dispute any facts or factors material to sentencing in the presentence report filed herein.  Further, the Defendant hereby sets forth his position with respect to the sentencing factors.

The 18 U.S.C. § 3553 Factors as Applied to this Case

The sentencing guidelines herein call for a sentencing range of 8-14 months.  Defendant would respectfully submit that a sentence in the mid to low end of the guidelines is appropriate.

1.    **Nature and circumstances of the offense**.

In August 2016 Patel left China where he had been working as a teacher and traveled to the Kingdom of Jordan.  While in Jordan, Patel was arrested and detained.  The FBI in Jordan learned of Patel's arrest.  Consequently, the FBI obtained and searched the computer Patel had used while he was in China.  Upon doing so, the FBI learned Patel was performing searches related to ISIS.  While traveling back to and shortly after his arrival in the United

States, Patel made statements concerning ISIS and/or his visit to Jordan to three (3) FBI-related personnel/sources. After returning to his parents' home in Williamsburg in September 2016, Patel began applying for jobs with various law enforcement agencies and branches of the military, including the United States Army and United States Air Force. In December 2016, as part of the application process for the United States Army, Patel completed an Applicant Questionnaire that included questions relating to foreign travel. Patel indicated that the only time he had traveled outside the United States in the past seven (7) years was on a family visit to India in 2011-2012. Patel was also asked to provide a copy of his passport. Patel advised the Army recruiter that he would provide the passport at a later date. Two days later, Patel submitted an application for a replacement United States passport in which he advised his passport was "Accidentally thrown in garbage" in October 2016. In December 2016, Patel also applied to the United States Air Force Officer Candidate Selection Process. Part of the paperwork submitted in connection with the Air Force application contained the same false statement about foreign travel that Patel made to the Army. The FBI located Patel's passport in his apartment on the date of his arrest in July 2017.

      As noted in the Statement of Facts filed herein, Patel began making statements in late 2016 indicating he did not support ISIS. The following are summaries of conversations between Patel and a FBI Confidential Human Source (CHS) that were provided by the United States in discovery:

      A.    <u>Between 10/31/16 - 11/04/16</u>: Patel sends CHS an article about ISIS attacking a random teenage German couple. Patel tells CHS that he (Patel) thinks the attack was

extremism and that it could of been the both of them (Patel/CHS) who were attacked. Patel tells CHS that the attack by ISIS is a clear verdict of haraam (forbidden). CHS tell Patel that he/she doesn't know what to think about the attack because he/she (CHS) hasn't done research on the attack and that God knows best. Patel tell CHS that he (Patel) has two Afghan friends that say the same thing and those two Afghan friends are terrorists.

Patel asks CHS if CHS is in North Carolina. CHS tells Patel that he/she (CHS) did not get the job that he/she interviewed for in North Carolina. Patel tells CHS that he/she (CHS) should apply to Hamtramck Police. CHS tells Patel that he couldn't be a cop because he would get in trouble for malicious behavior. Patel tells CHS that CHS would be good and he would get training. Patel tells CHS that he put in for a few different police departments, because he (Patel) can do some good in the world and thinks that he (Patel) would really like Detective work.

B.       Between 11/18/16 - 11/25/16: CHS asks Patel about his (Patel) job hunting is going. Patel tells CHS that he (Patel) is waiting on calls to take a fitness test from different police departments. Patel tells CHS that he (Patel) already passed a fitness test in Suffolk, VA and also applied for a corrections officer position. . . . CHS asks Patel if he (Patel) thinks something like that will draw attention. Patel tells CHS that all that garbage they thought was a conspiracy is probably actual terror and that anyone who says 9/11 is justified is a lunatic.

Patel tells CHS that even Muslims died in the 9/11 attacks. Patel tells CHS that he (Patel) thinks that the only reason they may have been lenient about those things is due to their upbringing and being angry about life. Patel tells CHS that he (Patel)

3

completely associated things. Patel tells CHS that he (Patel) thinks the good groups fighting out of Syria might actually be U.S. backed groups.

Patel tells CHS that he (Patel) met a dude at the gym whose brother was shot and killed by Taliban in Afghanistan because he was an Afghan army soldier. Patel tells CHS that it kinds of puts things into perspective. Patel tells CHS "This AQ and ISIS guys are a bunch of bad hombres as trump would say. They would easily kill u and me if it earned them some gain."

C. Between 12/29/16 - 12/31/16: CHS asks Patel how he (Patel) is going to be a police officer but doesn't have the discipline to wake up for prayer. Patel tells CHS that he (Patel) does have the discipline but hasn't reaped any fruits from it. Patel tells CHS that he (Patel) knows that the fruits are in the hereafter.

Patel tells CHS, that at times he feels naive at Jummah (Friday prayers), and that it's boring and the Khatib (sermon) sucks. Patel talks to CHS about prosciutto and how good it is. Patel tells CHS that he (Patel) most likely won't eat it. Patel tells CHS that his (Patel) Iman (faith) is low and that he (Patel) needs counseling.

Patel ask CHS what his/her (CHS) thoughts are on the LGBT community. Patel tells CHS that some of them are sincere and he (Patel) feels bad for them.[1] The CHS reminded Patel that it is a lifestyle that is unislamic.

D. Between 02/22/17 - 02/24/17: Patel talks about "reddit" and mentions a forum for "Ex-Muslims" that intrigued him (Patel). CHS asks Patel if he (Patel) is an ex-

---

[1] While on Reddit, Patel read about a high school boy in Saudi Arabia who wanted to kill himself and was ready to do it because he didn't feel right in his biological gender.

Muslim now.  Patel explains to CHS why he (Patel) doesn't think Islam is a divine ideology. Patel states that the Prophet Muhammad was a very intelligent charismatic man who suffered from a psychiatric condition.

Patel continues to question Islam and the Quran.  Patel tells CHS that the fact that there is an eternal hell, proves that Allah is not the most merciful nor most intelligent. Patel backs his claims by using examples from "Hadiths" (sayings of the Prophet Muhammad) that he (Patel) believes are silly.

E. <u>Between 03/04/17 - 03/06/17</u>: Patel tells CHS that he (Patel) has a good point to make for debunking Islam.  Patel talks about he history of the Kaaba.  Patel tells CHS that a clear explanation of his (Patel) point is that Muhammad hijacked the traditions of the Jews and Christians and merged them with pagan Arab traditions.

CHS tells Patel that his (Patel) arguments are weak.  Patel wants to know where his arguments are weak because he wants to solidify his decision to leave religion. CHS and Patel talk about Patel's reasoning for leaving religion.  Patel tells CHS that he (Patel) has zero Hindu thoughts and zero Muslim thoughts.  CHS gives Patel links to websites that can answer his questions about religion.

2. **<u>History and Characteristics of the Defendant</u>**.

Shivam Patel is twenty-eight years old.  He grew up in a home with both of his parents and his older brother.  Patel had a normal childhood until he was diagnosed with Childhood Hodgkins Lymphoma Disease at the age of twelve (12).  He underwent chemotherapy and radiation for six (6) months and was then determined to be in remission.  The cancer treatments left him with hypothyroidism for which he has to take daily medication.  Growing up, Patel's

5

basic needs were met, and there were no allegations of any kind of abuse. Patel was more of an introvert as a child who enjoyed video games and computers.

Patel graduated from Jamestown High School in 2007 and attended various colleges from 2007 to 2014. He obtained an Associates of Science degree in Business Administration from Thomas Nelson Community College in 2011 and a Bachelor of Science degree in Criminal Justice from Virginia State University in 2014. Patel's overall grade point average at Virginia State was a 4.00. He also obtained an online teaching certificate from the University of Toronto in 2016 to teach English as a foreign language in order to teach in China.

From September 2016 until the time of his arrest, Patel was working for his parents as the manager at one of their motels in Williamsburg. He had assisted his parents in the family business on and off from the time he was 13 years old. Patel also worked at Busch Gardens following his graduation from college where he was a supervisor. He left this position to take the job teaching English as a foreign language in China.

Patel is not married nor does he have any children. He is close with his family, including his extended family. Patel was living with his parents and in the work-related apartment at the motel at the time of his arrest. Patel's parents have indicated they are willing to have him return home after he is released from his period of incarceration.

Overall, Patel is physically healthy notwithstanding the conditions described above. He has never had a substance abuse or alcohol abuse problem. Patel advised he was diagnosed with a social anxiety disorder in 2007. He was involuntarily committed in July 2008 after he presented to an emergency room with paranoid and delusional thoughts. He was detained on a temporary detention order. He was diagnosed with psychosis with

delusional and paranoid thoughts with combativeness. Shortly after his discharge, Patel's parents took him to a different facility because he had a plan to kill himself. Patel was admitted to the psychiatric medicine unit at Sentara Obici Hospital in Suffolk. He was diagnosed with paranoid schizophrenia and was treated for approximately a week and a half. After said treatment, Patel was discharged with a recommendation to follow up with outpatient treatment. Patel took the medications for a period of time and eventually stopped taking them as things got "back to normal". Instead, he relied on meditation and yoga. Patel has not had any more psychiatric issues since 2008.

Counsel has attached hereto twenty (20) letters from Patel's family and friends as well as an allocution letter from Patel[2] to provide the Court with insights into the kind of person Patel is apart from the instant offenses.

3. **Seriousness of the Offense**.

The offenses at conviction are obviously serious; however, it is important to note that Patel has cooperated with the authorities, admitted his guilt and accepted responsibility for his actions.

4. **Need to Deter Future Criminal Conduct**.

There is a need for the sentence imposed herein, as in all cases, to deter future criminal conduct. The sentencing guidelines call for a sentencing range of 8-14 months. Counsel would respectfully submit that a sentence in the low to mid level of the guideline range could be imposed that would be sufficient to deter future criminal conduct.

---

[2] Patel's allocution letter was transcribed from a hand-written letter he provided to counsel. The original letter signed by Patel will be presented at the sentencing hearing.

5.  **Need to Protect the Public from the Defendant's Future Criminal Conduct**.

Shivam Patel is twenty-eight years old. His criminal history consists of one conviction for Reckless Driving in 2010. Thus, his criminal history category is I. Counsel would respectfully submit that a sentence in the low to middle of the guideline range could be imposed that would protect the public from the Defendant's future criminal conduct. It is important to note that in late 2016 Patel began make statements that indicated he did not support ISIS. This was prior to his arrest in July 2017. At the time of sentencing, the Defendant will have been incarcerated roughly eleven (11) months. If the Court sentences the Defendant to a sentence in the mid to low level of the sentencing guideline range, the Defendant would have already served his time. He would then be placed on probation which would be more than sufficient to assure that the Defendant, who has never been in any kind of criminal trouble before, maintains stable employment and returns to being a productive, contributing member of the community.

6.  **Need to Provide Training, Medical Care, or Correctional Treatment to Defendant**.

Patel already has a bachelor's degree. The treatments that he had for his childhood cancer left him with hypothyroidism for which he takes a daily medication. He has also suffered some psychological issues, having been diagnosed with social anxiety disorder in 2007 and paranoid schizophrenia in 2008. Patel has been off of all mental health medication since approximately 2009, and it does not appear he has had any treatment since then. While Patel has experimented with illicit substances and alcohol, it does not appear that he has a substance abuse problem. Patel has not participated in a drug treatment program prior to his arrest. Patel may be in need of a complete mental health evaluation and such treatment

as may be deemed appropriate.

      7.    **Need to Avoid Unwanted Disparities**.

Counsel would respectfully submit that this is not a significant concern in this case as there are no co-defendants. Further, every defendant and their specific offense conduct is unique, and the Court's sentence should reflect that.

## Conclusion

In determining what sentence to impose upon a particular defendant the factors to be considered pursuant to 18 U.S.C. § 3553(a) include the following:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

Rita v. United States, 551 U.S. 338, 347-48 (2007); see also Kimbrough v. United States, 552 U.S. 85, 101 (2007). Additionally, 18 U.S.C. § 3553(a) directs the sentencing court to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing as set forth above. 18 U.S.C. § 3553(a). Furthermore, in reaching its sentencing decision, the sentencing court "may not presume that the Guidelines range is reasonable." Nelson v. United States, 555 U.S. 350 (2009) (per curiam); Gall v. United States, 552 U.S. 38, 50 (2007); see also Rita, 551 U.S. at 351; United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The court "must make an individualized assessment based on the facts presented." Rita, 551 U.S. at 50. It is axiomatic that "the sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 552 U.S. at 52

(quoting Koon v. United States, 518 U.S. 81, 98 (1996)).

In this case, the guideline range for the Defendant is a sentencing range of 8-14 months. The Defendant was arrested on and has been incarcerated since July 6, 2017. Thus, at the time of sentencing the Defendant will have been held for 10 months, 29 days. Defendant would respectfully submit that the Court could impose a sentence consistent with time served which would be "sufficient, but not greater than necessary" to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**WHEREFORE**, the Defendant respectfully requests to be heard on this issue at sentencing.

                                                       Respectfully submitted,
                                                       SHIVAM RASHMIKANT PATEL


                                                    By: /s/ Timothy G. Clancy
                                                            Of Counsel

Timothy G. Clancy (VSB #25117)
Counsel for Defendant Shivam Rashmikant Patel
CLANCY & WALTER, P.L.L.C.
544 Settlers Landing Road
Hampton, Virginia 23669
(757) 826-5000
(757) 826-5936 (FAX)
tclancy@clancywalterlaw.com

## CERTIFICATE

I, Timothy G. Clancy, do hereby certify that on the  29th  day of May, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Andrew C. Bosse, Esquire
> Assistant United States Attorney
> Office of the United States Attorney
> 101 W. Main Street
> Suite 8000
> Norfolk, VA 23510
> andrew.bosse@usdoj.gov

I further hereby certify that on the  29th  day of May, 2018, I e-mailed and mailed by U.S. mail a true and exact copy of the foregoing to the following non-filing user:

> Leah D. Greathouse
> United States Probation Office
> 600 Granby Street, Suite 230
> Norfolk, Virginia 23510
> Leah_Greathouse@vaep.uscourts.gov

/s/
Timothy G. Clancy (VSB #25117)
Counsel for Defendant Shivam Rashmikant Patel
CLANCY & WALTER, P.L.L.C.
544 Settlers Landing Road
Hampton, Virginia 23669
(757) 826-5000
(757) 826-5936 (FAX)
tclancy@clancywalterlaw.com