IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| SHIVAM PATEL | ) | |
| | ) | |
| Defendant-Petitioner. | ) | CRIMINAL NO. 2:17cr120 |
| | ) | CIVIL NO. 2:19cv94 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**REPLY TO THE UNITED STATES ANSWER IN
OPPOSITION TO THE MOVANTS 28 U.S.C. § 2255**

TO THE HONORABLE JUDGE MARK S. DAVIS

1. COMES NOW, SHIVAM PATEL, the Movant, pro se, and respectfully files this Reply to the United States Answer to Movant's 28 U.S.C. § 2255 Motion, pursuant to Rule 5 governing 2255 proceedings. Movant stands firmly on sole point in his initial 2255 motion. This reply will address the points raised by the United States.

2. Movant asserts that Counsel Timothy Clancy's Affidavit, produced alongside United States Answer to Movant's 28 U.S.C. § 2255 Motion, is incomplete and does not present full information about Movant's psychiatric illness. Movant asserts that Counsel failed to provide documentation to the Court received from Movant's family; the subject of the documentation clearly shows a direct link to Movant's troubling behavior in 2015, and egregious conduct in 2016, and the early months of 2017.

3. As clearly presented in the PSR and at Sentencing, Movant has suffered from Hypothyroidism since 2002, as a side effect of treatment undergone for Hodgkin's Lymphoma. What was not presented before the Court was Movant's non-adherence to his daily Hypothyroidism medication, and the mental health break the non-adherence produced.

4.  Upon Movant's incarceration his parents, Rashmikant and Jayshree Patel, explained to Counsel Clancy that their son's conduct, for which he had been charged, was due to his non-adherence to his daily prescription thyroid medication. Movant's parents knew their son had stopped taking his daily prescribed thyroid medication in mid-2015, they also knew what havoc abnormal Thyroid Stimulating Hormone (TSH) can cause with the human body and mind. TSH is kept in check by prescribed thyroid medication, such as Levothyroxine. Prior to 2016, Movant normally had his blood tested once or twice a year. Lab reports from 2015 and a lab report from 2016 showing Movant's often abnormal TSH level were given to Counsel Clancy. In addition, Mr. and Mrs. Patel provided Counsel Clancy with a link to a website study at The National Institutes of Health, that fully documents the adverse behavioral and mental health effects abnormal TSH levels produce. Movant's parents provided this information and documentation to Counsel Clancy via email and phone calls. Counsel Clancy never investigated the information he received from Movant's parents, nor was a defense considered based on the information, or the information presented to the Court.

5.  Counsel Clancy advised Movant and Movant's parents not to discuss the case; this left Movant "in the dark" regarding the information his parents provided Counsel Clancy. Movant believed his egregious behavior, for which he had been charged, was solely due to a recurrence of the mental illness he had experienced in 2008; Counsel Clancy would not consider a mental health break as a defense, telling Movant that if such a defense was mounted, Movant would spend the rest of his life in a mental institute. Some weeks after his initial meeting with Movant, and weeks after he had received emails and phone calls from Movant's parents providing him with the weblink to the non-adherence information, Counsel Clancy finally told Movant what Movant's parents were insisting. In the discussion that followed, Counsel Clancy stated Movant's parents were naive, and it was silly for them to believe such a thing. Counsel Clancy claimed he had looked up Hypothyroidism and had found no information regarding impaired judgement. By the end of the discussion Counsel Clancy had convinced Movant that non-adherence to his prescribed thyroid medication had nothing to do with the egregious behavior Movant had been charged with. Counsel Clancy never shared with Movant The National Institutes of

Health study; thus, when Movant wrote his Allocution Statement, he was ignorant of the empirical evidence The National Institutes of Health, a U.S. Government agency, provides regarding the link between non-adherence to thyroid medication and mental illness. Had Counsel Clancy gone to The National Institutes of Health web page "Hypothyroidism Presenting as Psychosis: Myxedema Madness Revisited", from the link in the email he received from Movant's father, he would have seen similar articles listed on the right-hand side of the screen. Had he clicked on the "see all..." link at the bottom of that list he would have discovered links to 98 additional articles and studies, all undertaken by doctors affiliated with The National Institutes of Health, and all on the same topic. Titles such as, "Mania as a presentation of primary hypothyroidism", "Acute psychosis as an initial manifestation of hypothyroidism: a case report", and "Psychiatric presentations of hypothyroidism", to name just three of the 98 additional articles.

6. Movant is not at complete fault for his non-adherence to his prescribed thyroid medication, Levothyroxine. In 2015, Movant read online that Blackseed Oil can cure everything except death; he began treating his Hypothyroidism with daily doses of the oil in lieu of Levothyroxine. He ingested seaweed, too, having heard of health benefits it provides. By September 2015, Movant's family had become alarmed at his mood swings and troubling behavior and insisted his blood be tested; the lab report showed a TSH level so far out of normal range, it was "off the chart". Movant's parents insisted he see a doctor. A Naturopathic Doctor in Virginia Beach was chosen, who concurred with Movant's Blackseed Oil treatment in lieu of Levothyroxine to treat Hypothyroidism.

7. Included with this Motion are Affidavits from Movant and his parents documenting their discussions with Counsel Clancy. Also included with this Motion are Movant's lab reports and screenshots of emails between Movant's father and Counsel Clancy that document the efforts Movant's family went through to make Counsel Clancy "see" that it was their son's non-adherence to his prescribed thyroid medication, Levothyroxine, that caused his mental health break.

8. Counsel Clancy asserts in his Affidavit, "Counsel would point out the underlying offenses occurred approximately three months after defendant reported his mind returned to a 'normal

state'." This assertion proves, yet again, that no investigation was ever undertaken; had Counsel Clancy read The National Institutes of Health study, provided to him by Movant's family, he would have learned, "Successful treatment with thyroid replacement usually reverses the effects of hypothyroidism, although the psychiatric neurologic sequelae may take longer to resolve." Movant, upon returning to his parents' house in September 2016, bent to his father's will and resumed taking his daily prescribed thyroid medication, Levothyroxine; his TSH level went back into normal range, but his mind took longer to return to normal. Even though Counsel Clancy failed to investigate non-adherence to thyroid medication, thus not learning that resuming medication often does not immediately return the mind to a normal state, or the wrong dosage of medication can cause a worsening of the mental state, he relies on Movant, a person with prior severe psychiatric problems, to self-diagnose. Had Counsel Clancy researched mental illness or similar wording for mental illness, he might have discovered study after study, website after website, that document that many people who are mentally ill deny being mentally ill. The National Institutes of Health, that so thoroughly document non-adherence to medication in Hypothyroidism, also has a study about mental illness denial in the mentally ill. It is noteworthy that in the "Position of Parties with Respect to Sentencing Factors" report, Counsel Clancy states, "Patel may be in need of complete mental health evaluation and such treatment as may be deemed appropriate", yet he believes his client is completely normal in the Fall and Winter of 2016 into early 2017, because his client said so.

9. Movant asserts that Counsel Clancy failed to investigate the claims and information Mr. and Mrs. Patel provided; Counsel Clancy refused to consider all avenues of defense even though Movant had a prior history of mental illness; and, Counsel Clancy having been presented new empirical data by Mr. and Mrs. Patel regarding their son's mental health at the time of his egregious conduct, dismisses this, too; all of which are contrary to the American Bar Association's Criminal Justice Standards for the Defense Function, and amount to ineffective assistance of counsel. These failures by Counsel Clancy clearly establish a case for prejudice, because as noted at Sentencing, "The government points out that if we had some kind of mental health break or issue at the time that these statements were made, it raises a different specter. The Court can't really speculate about that". The empirical data clearly

establishes that a mental health break occurred, yet Counsel Clancy never presented the data to the Court; not in 2018, and not with his Affidavit to the Court in 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 17 2019.  _____
                                                  Shivam R. Patel